IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
                          )
MCI CONSTRUCTORS, INC.    )
                          )
     Plaintiff,           )
                          )
     v.                   )         1:99CV2
                          )
HAZEN AND SAWYER, P.C.    )
                          )
     Defendant.           )


                          )
MCI CONSTRUCTORS, INC.    )
                          )
     Plaintiff,           )
                          )
     v.                   )         1:02CV396
                          )
CITY OF GREENSBORO, N.C.  )
                          )
     Defendant.           )
```

MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

On June 17, 2008, Plaintiff, MCI Constructors LLC, moved to vacate, and, in the alternative, remand an arbitration award in which Plaintiff was ordered to pay Defendant, the City of Greensboro, North Carolina, in the amount of $14,939,004. (1:99-cv-2, Docs. 535, 541); (1:02-cv-396, Docs. 68, 70.)[1] On July 10, 2008, Plaintiff's performance bond guarantor, Counter Defendant,

_____

[1] The docket numbers noted in the remainder of this memorandum opinion refer to documents associated with case number 1:99-cv-2, not case number 1:02-cv-396, although the same pleadings were filed in both cases.

National Union Fire Insurance Company of Pittsburgh, also moved to vacate the award. (Doc. 548.) For the reasons set forth herein, Plaintiff and Counter Defendant's motions to vacate are DENIED and Plaintiff's motion to remand is DENIED.

## I.    Facts

The general background of this case has been set forth in the previous memorandum opinions associated with this matter dated March 24, 2000, October 6, 2000, January 18, 2001, September 6, 2001, and November 1, 2002.[2]

On November 25, 2005, the court denied Plaintiff, MCI Constructors LLC (hereinafter "Plaintiff" or "MCI") and Defendant's, the City of Greensboro, North Carolina (hereinafter "Defendant" or "City"), cross-motions for summary judgment. (Doc. 462.) On December 5, 2005, a pretrial conference was held in preparation for a trial date of February 6, 2006.

On January 26, 2006, City, MCI, and MCI's performance bond guarantor, National Union Fire Insurance Company of Pittsburgh (hereinafter "Counter Defendant" or "National Union"), advised the court that they had entered a binding arbitration agreement (hereinafter the "Arbitration Agreement") to resolve all outstanding issues between them arising from a construction contract (hereinafter the "Contract") dispute. (Doc. 490.) The

---

[2] The Honorable William L. Osteen, Sr. presided over this case until September, 2007. Subsequently, Judge Osteen, Sr. retired and the case was ultimately assigned to the undersigned court.

Arbitration Agreement entered by the parties provided, in pertinent part, as follows:

1. The "[a]rbitration will be final and binding," and "will be pursuant to the Federal Arbitration Act" (hereinafter the "FAA"). (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc. 497-2) at 1.)

2. "Except as provided herein or otherwise agreed, the rules would be standard AAA Complex Commercial or JAMS rules." (Id.)

3. The proceeding "would be bifurcated between liability and damages." (Id. at 1-2.)

4. With regard to the liability phase, "[t]he parties have agreed to substitute you[, the arbitrators,] in the place of Edward Kitchen, who was then City Manager and acted as Referee pursuant to Article 16, and resubmit the Liability Phase issue: was the termination of MCI's performance for cause or convenience?" (Id. at "STIPULATED SUBMISSION TO PANEL OF ARBITRATORS" ¶ 9.)

5. Concerning the damages phase, "[r]egardless of which party wins at the [Liability] Phase, there would be a separate hearing on damages . . . . If the City has prevailed at the [Liability] Phase, the second issue will be what amount should either partly [sic] recover

under Articles 15.2.4, 17.5 and 18 of the Contract."

(_Id._ at 2-3.)

The parties subsequently filed a joint motion to stay the matter pending the conclusion of the arbitration proceeding for which they intended to participate. (Doc. 490.) The court granted the parties' motion on February 7, 2006. (Order dated 2/7/2006 (Doc. 494).)

After the court stayed the action, the arbitration proceeding was conducted before a three-member panel of arbitrators (hereinafter the "Panel"). Following a finding of liability in favor of City (hereinafter the "Liability Award"), the Panel considered the issue of damages. During the course of the damages phase, both parties presented their arguments and theories to the Panel. MCI argued that, taking into consideration the balance of $9,667,357 it was due under the Contract, it was entitled to recover approximately $450,000 from City. (_See_ Decl. of William Cary Ex. 57 (Doc. 525-6) at 103.)[3]

---

[3] Several documents referred to throughout this opinion are before the court as attachments to a declaration submitted by William Cary, one of City's attorneys. National Union has neither objected to Mr. Cary's declaration nor the exhibits that accompany it. Although MCI has objected to Mr. Cary's declaration, it does not object to the court's consideration of the exhibits attached thereto. (Pl.'s Mot. to Strike Declaration of William Cary (Doc. 533) at 1 n.1 ("[T]he documents themselves need not be stricken at this time . . . .").) Accordingly, the court has relied on Exhibits 50, 56, 57 and 61 of Mr. Cary's declaration, as the parties do not object to the introduction of these documents and the documents do not appear elsewhere in the record.

City, on the other hand, contended that it was entitled to a recovery of approximately $17,000,000 from MCI. (See Decl. of William Cary Ex. 56 (Doc. 525-5) at Tab 17.) In light of the evidence and arguments presented by the parties, the Panel found that City was entitled to recover $14,939,004[4] in damages from MCI (hereinafter the "Damages Award"). (Def.'s Notice of Arbitration Award Ex. A (Doc. 503-2) at 2.)

Neither the Liability Award nor the Damages Award outlined the Panel's reasoning in coming to its conclusions on the liability and damages issues. The Damages Award did however state that "[a]ny claims or issues of either party not expressly awarded herein, are hereby denied." (Id.)

On April 24, 2008, MCI sent an electronic message to the Panel. (Decl. of William Cary Ex. 50 (Doc. 525-8).) MCI requested that the Panel modify the Damages Award. (Id.) MCI contended that the Panel failed to deduct the Contract balance from the amount the Panel awarded to City. (Id.) Further, MCI objected to the form of the Damages Award. (Id.) MCI maintained that the Panel was required to provide a reasoned award that addressed the disposition of all the claims submitted by the parties to the Panel. (Id.)

On May 7, 2008, the Panel responded to MCI's electronic message. (Decl. of William Cary Ex. 61 (Doc. 525-10).) The

---

[4] Plus interest at the federal judgment rate from the date of the City Manager's damages decision. (Def.'s Notice of Arbitration Award Ex. A (Doc. 503-2) at 2.)

Panel denied MCI's request for the Panel to modify the Damages Award due to a purported computational error. (Id. at 2.) The Panel stated that "[t]he Damages Award did not contain any errors and the arbiters have already decided all claims submitted to them." (Id.)

Similarly, the Panel "denied" MCI's objection to the form of the Damages Award. (Id.) The Panel stated that pursuant to the term in the Arbitration Agreement that provided that the arbitration would be governed by "standard AAA Complex Commercial or JAMS rules," it opted to proceed under the Commercial Rules. (Id.) The Panel noted that the Commercial Rules do not require arbitrators to provide reasoned awards unless the parties make a written request for a reasoned award prior to the appointment of the arbitrators. (Id.) The Panel reasoned that since none of the parties requested a reasoned award prior to its appointment, it was not obligated to provide a reasoned award and the form of the Damages Award was not erroneous. (Id.)[5]

## II. Legal Standard

"The process and extent of federal judicial review of an arbitration are substantially circumscribed." Patten v. Signator Ins. Agency, 441 F.3d 230, 234 (4th Cir. 2006). "An arbitration award is enforceable even if the award resulted from a

---

[5] The Panel also noted that the (unreasoned) form of the Damages Award mirrored the form of the Liability Award, to which MCI did not object. (Decl. of William Cary Ex. 61 (Doc. 525-10) at 2.)

misinterpretation of the law, faulty legal reasoning, or erroneous legal reasoning." <u>Genus Credit Mgmt. Corp. v. Jones</u>, No. JFM-05-3028, 2006 U.S. Dist. WL 905936, at *2 (D. Md. Apr. 6, 2006) (<u>citing</u> <u>Upshur Coals Corp. v. United Mine Workers of Am., Dist. 31</u>, 933 F.2d 225, 229 (4th Cir. 1991)). "In order for a reviewing court to vacate an arbitration award, the moving party must sustain the heavy burden of showing one of the grounds specified in the Federal Arbitration Act or one of certain limited common law grounds." <u>Choice Hotels Int'l, Inc. v. S.M. Prop. Mgmt., LLC</u>, 519 F.3d 200, 207 (4th Cir. 2008) (citation and quotation marks omitted).[6]

## III. Discussion

### A. Motions to Vacate

---

[6] The FAA provides that:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration–
    (1) where the award was procured by corruption, fraud, or undue means;
    (2) where there was evident partiality or corruption in the arbitrators, or either of them;
    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

MCI and National Union have moved to vacate the Damages Award on the grounds that (1) the Panel applied the wrong body of procedural rules in selecting the form of the Damages Award, (2) the Damages Award did not draw its essence from the Arbitration Agreement and the Contract, (3) the Panel did not make a mutual, final, and definitive award based on the subject matter submitted to them, (4) the Damages Award is unenforceable, and (5) City materially breached the Arbitration Agreement. (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 4-20); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)).)

### 1. Procedural Rules and the Form of the Award

Three bodies of procedural rules are referred to in the Arbitration Agreement entered by the parties. The Arbitration Agreement provides that "[e]xcept as provided herein or otherwise agreed," the arbitration "would be [conducted pursuant to] standard AAA Complex Commercial or JAMS rules." (Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc. 497-2) at 1.) Another provision in the agreement states that "[i]f MCI prevails at the [Liability] Phase . . . . [t]here will be a complete arbitration utilizing the AAA Rules and Procedures for Large, Complex Construction Disputes on MCI's damages . . . ." (Id. at 3.)

The three potentially applicable sources of procedural rules contained in the Arbitration Agreement have different

requirements with regard to whether arbitrators must provide a breakdown of the computations that underlie their awards or must outline the reasoning upon which their awards are based. Under the JAMS Comprehensive Arbitration Rules and Procedures arbitration awards must be reasoned. JAMS Rule 24(h) states that "[t]he Award will consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award." JAMS Engineering and Construction Arbitration Rules and Procedures, http://www.jamsadr.com/images/PDF/JAMS-comprehensive_arbitration_rules.PDF at 20.

Under the AAA Rules and Procedures for Large, Complex Construction Disputes, awards must be broken down, but generally do not have to be reasoned absent a request from the parties. Construction Rule R-43(b) states that "[t]he arbitrator shall provide a concise, written breakdown of the award. If requested in writing by all parties prior to the appointment of the arbitrator, or if the arbitrator believes it is appropriate to do so, the arbitrator shall provide a written explanation of the award." Construction Industry Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Construction Disputes), http://www.adr.org/sp.asp?id=22004#R43.

In contrast to the JAMS and Construction rules, awards issued pursuant to the AAA Commercial Arbitration Rules do not need to be broken down and are not required to be reasoned unless the parties request a reasoned award before the arbitration proceeding commences. Commercial Rule R-42 states that "[t]he arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate." American Arbitration Association Commercial Arbitration Rules and Mediation, http://www.adr.org/sp.asp?id=22440#R42.

In the instant case, City prevailed at the liability phase and none of the parties requested a reasoned Damages Award before the Panel rendered its damages decision. Pursuant to the applicable procedural provision in the Arbitration Agreement, the Panel elected to proceed under the Commercial Rules, rather than the JAMS Rules, and declined to provide its reasoning for the Damages Award. (Decl. of William Cary Ex. 61 (Doc. 525-10) at 2.) On review, MCI and National Union contend that the Damages Award should be vacated because the Panel should have applied the Construction Rules, not the Commercial Rules. (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 2-3); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)).) In the

alternative, MCI argues that the parties did not intend to be bound by the generally applicable procedural rules provision, as evidenced by the provision's inclusion of the words "would be."[7] MCI maintains that in the absence of such an intent to be bound, the Panel was not authorized to select the procedural rules that would apply if City prevailed at the liability phase.

The court finds that MCI and National Union's arguments are without merit. The Panel's use of the Commercial Rules does not constitute a legal or factual error, let alone a basis for vacatur.

The plain language of the applicable procedural rules provision in the Arbitration Agreement is clear and unambiguous. The Panel could apply one of two bodies of procedural rules, the JAMS Rules or the Commercial Rules, unless MCI prevailed at the liability phase. (See Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 1 ("<u>Except as provided herein or otherwise agreed</u>, the rules would be standard AAA Complex <u>Commercial or JAMS</u> rules." (emphasis added)).) Although the Arbitration Agreement states that the Construction Rules are to be applied if MCI prevails at the liability phase, MCI did not prevail at the liability phase. (See Pl.'s Mot. to Vacate (Liability Award) Ex. A (Doc.497-2) at 2-3 ("<u>If</u> MCI prevails at the [Liability] Phase . . . . [t]here will be a complete arbitration utilizing the AAA

_____

[7] MCI raised this argument for the first time during an oral argument hearing on pending motions held on January 26, 2009.

11

Rules and Procedures for Large, Complex Construction Disputes on MCI's damages . . . .") (emphasis added)); (Def.'s Notice of Arbitration Award Ex. A (Doc. 503-2) at 2 (finding that City's termination of MCI's performance was "for cause").)  Since there is no "special rules" clause under the provision in the agreement discussing how the arbitration should proceed if City prevailed at the liability phase, as City did, the Panel was correct to rely on the umbrella procedural rules provision in the agreement. In sum, the Panel validly exercised their discretion and did not err in doing exactly what the parties authorized it to do, apply the Commercial Rules.

Moreover, even if the court accepted MCI's factual contentions, vacatur is not appropriate.  Even assuming, arguendo, that the Panel misread the Arbitration Agreement and consequently erred in applying the Commercial Rules, an award may not be vacated merely because an arbitrator misread the arbitration agreement.  See Patten, 441 F.3d at 235 ("An arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has 'misread the contract.'" (internal citations omitted)).  Further, even if the court agreed with MCI's argument that there was no binding agreement between the parties as to the procedural rules that were to be applied if City prevailed at the liability phase, contrary to MCI's assertion, the Panel had the authority to select the applicable procedural rules in the absence of an

agreement by the parties.  Where a "clear and unambiguous"
procedural standard has not been set forth in the arbitration
agreement, the "arbitrator has the authority and the discretion
to follow procedures that he or she deems to be appropriate."
Int'l Bhd. of Elec. Workers, AFL-CIO, Local No. 1434 v. E. I.
DuPont de Nemours & Co., 420 F.Supp. 208, 211 (E.D. Va. 1976);
see also Int'l Union, United Mine Workers of Am. v. Marrowbone
Dev. Co., 232 F.3d 383, 389 (4th Cir. 2000) ("An arbitrator
typically retains broad discretion over procedural matters . . .
.").


### 2.    Award Drawing Its Essence From the Agreement

At common law, an arbitration agreement may be vacated if it
fails to "draw its essence from the contract."  Patten, 441 F.3d
at 234.  However, "[a]n arbitration award does not fail to draw
its essence from the agreement merely because a court concludes
that an arbitrator has 'misread the contract.'"  Id. at 235
(quoting Upshur, 933 F.2d at 229).  "An arbitration award fails
to draw its essence from the agreement only when the result is
not rationally inferable from the contract" or "[the] arbitrator
based his award on his own personal notions of right and wrong."
Id.  (internal quotation marks and citations omitted).

In the present case, MCI and National Union argue that the
Damages Award does not draw its essence from the Arbitration

Agreement and Contract (hereinafter collectively referred to as the "Agreement") because the award did not discuss whether arguments offered by MCI regarding articles nine and eleven of the Contract defeated City's damages claims. (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 6-8); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)).) In support of this argument, MCI and National Union rely on the Fourth Circuit's holding in <u>Clinchfield Coal Co. v. District 28, United Mine Workers of America</u> that 'where the . . . arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract.' (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 6-8) (quoting <u>Clinchfield Coal Co. v. District 28, United Mine Workers of Am.</u>, 720 F.2d 1365, 1369 (4th Cir. 1983)); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)).)[8]

---

[8] In <u>Hall Street Assoc., L.L.C. v. Mattel, Inc.</u>, __ U.S. __, 128 S.Ct. 1396, 1403 (2008), the Supreme Court recently held that "§§ 10 and 11 respectively provide <u>the FAA's</u> exclusive grounds for expedited vacatur and modification [of arbitration awards]." (Emphasis added). The <u>Hall Street</u> Court did not however determine whether common law grounds for vacatur, including "manifest disregard" and "essence of the agreement," are permissible bases for vacatur independent of, or as a shorthand for, the grounds for vacating awards that are specified in the

The court rejects MCI and National Union's "failure to discuss" argument. MCI and National Union's argument rests on the faulty premise that arbitrators are required to provide reasoned awards. Contrary to MCI and National Union's suggestion,

> courts generally have held that arbitrators are not required to give their reasons for an award or that the proceedings and record be as complete as a court trial. Arbitrators are not required to disclose the basis upon which the awards are made and courts will not look behind a lump-sum award in an attempt to analyze their reasoning process.

Atlanta-Tomberlin, Inc. v. E. Band of Cherokee Indians, 672 F. Supp. 887, 889 (W.D.N.C. 1987); see also Remmey v. PaineWebber, Inc., 32 F.3d 143, 150-51 (4th Cir. 1994) ("That the arbitrators' accompanying "Case Summary" did not mention all of [the movant's] claims is of no moment here. After all, the Supreme Court has held that arbitrators need not state reasons for reaching a particular result."); United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960) ("Arbitrators have no obligation to the court to give their reasons for an award."). MCI and National Union could have contracted for reasoned

---

FAA. Id. at 1404, 1406 ("parties wanting review of arbitration awards . . . may contemplate enforcement under state statutory law or common law . . . . [H]ere we speak only to the scope of expeditious judicial review under §§ 9, 10, and 11 [of the FAA], deciding nothing about other possible avenues of judicial enforcement of arbitration awards." (emphasis added)). Therefore, assuming, without deciding, that this court could vacate or remand the Damages Award for "failing to draw its essence" from the Agreement, the court finds that MCI has failed to carry its burden of proof.

arbitration awards, but they did not.  See _First Options of Chi._
_Inc. v. Kaplan_, 514 U.S. 983, 943 (1995) ("[A]rbitration is
simply a matter of contract between the parties."); _United_
_Paperworkers Int'l Union, AFL-CIO v. Misco, Inc._, 484 U.S. 29, 39
(1987) ("The parties bargained for arbitration to settle disputes
and were free to set the procedural rules for arbitration to
follow if they chose.").  Furthermore, under the applicable AAA
rules, MCI and National Union could have, but did not, request a
reasoned award before the arbiters were appointed or contend to
the Panel during the arbitration proceeding that the Panel should
find that a reasoned award was necessary.  MCI and National
Union's argument on review, in essence, asks this court to
rewrite the Contract.  The court declines MCI and National
Union's invitation.  "[T]he parties [had] a right to make their
own contract and it is not the function of this Court to rewrite
it or torture the meaning [of the agreement the parties willingly
entered]."  See _Torrington Co. v. Aetna Casualty & Sur. Co._, 264
S.C. 636, 643, 216 S.E.2d 547, 550 (1975); _see also_ _Penn v._
_Standard Life Ins. Co._, 160 N.C. 399, 76 S.E. 262, 263 (1912)
("Courts are not at liberty to rewrite contracts for the
parties.").

     Additionally, the proposition for which MCI and National
Union cite _Clinchfield_ is not persuasive on the facts of this
case.  The problem that the Fourth Circuit encountered in
_Clinchfield_ is not present here.  "In _Clinchfield_, the underlying

problem with the arbitrator's decision was that the result seemed
impossible to square with certain provisions of the contract;
without some discussion of the provisions by the arbitrator, the
court was forced to conclude that the arbitral award did not draw
its essence from the contract." Keebler Co. v. Truck Drivers,
Local 170, 247 F.3d 8, 12-13 (1st Cir. 2001). By contrast, in
this case, the Panel's Damages Award can be squared with the
Agreement. Just as the court previously found that a reasonable
jury could find in favor of City, the Panel's award could
plausibly be understood to rest on the reasonable view that MCI
and National Union's article nine and eleven arguments did not
defeat City's damages claims. (See Mem. Op. & Order dated
11/25/2005 (Doc. 462).)[9]

   In light of case law stating that reasoned awards are not
required and the dissimilarities between the facts in Clinchfield
and this case, the court concludes that where an arbitrator was

_____

[9] Moreover, the Arbitration Agreement states that "[i]f the
City has prevailed at the [Liability] Phase, the second issue
will be what amount should either [party] recover under Articles
15.24, 17.5 and 18 of the Contract." (Pl.'s Mot. to Vacate
(Liability Award) Ex. A (Doc.497-2) at 2-3.) Presumably, if the
parties intended for the Panel to specify how it arrived at its
final damages determination the agreement would state that the
issue the Panel must address is what amounts the parties are due
under each provision of the contract from which the parties
contend they are entitled to relief. Since all the parties asked
for was a singular "amount," the court finds, based on a plain
reading of the unambiguous language in the agreement, the parties
did not intend for the Panel to provide a reasoned Damages Award.
The parties received exactly what they contracted for, a single
numerical figure specifying the amount of recovery to which City
is entitled.

under no obligation to provide a reasoned award, the mere fact
that the award does not discuss allegedly critical contract
terminology does not by itself constitute a failure of the award
to draw its essence from the agreement.  See supra Part III.A.2.[10]

A party cannot satisfy its burden of proof with mere
conjecture that the arbiters failed in their duties or engaged in
misconduct.  See Jeffress v. Reddy, No. 98-2613, 2003 WL
22293579, at *4 (4th Cir. Oct. 7, 2003) ("Conjecture,
speculation, and mere possibilities will not sustain the
plaintiff's burden of proof on the proximate cause element."
(citing Fitzgerald v. Manning, 679 F.2d, 341, 349 (4th Cir.
1982))).  The only evidence that MCI and National Union presented
in support of its claim that the Damages Award did not draw its
essence from the Agreement was the fact that the award was not
reasoned.  Accordingly, the court finds that MCI and National
Union have not carried their burden of proving that the Damages
Award should be vacated because it failed to draw its essence
from the Agreement.

---

[10] The court notes that its interpretation of Clinchfield is
consistent with the understanding of the First Circuit Court of
Appeals and another district court in the Fourth Circuit.  See
Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 12-13 (1st
Cir. 2001) (distinguishing Clinchfiled in its decision to uphold
an arbitration award on a ground not stated by the arbitrator
himself); Van Pelt v. UBS Fin. Servs., Inc., No. 3:05cv477, 2007
U.S. Dist. WL 2997598, at *4 (W.D.N.C. Oct. 12, 2007) ("The panel
was silent concerning the basis for its monetary award, which is
not a basis for vacating the award.  Arbitrators need not state
reasons for reaching a particular result . . . .  [T]here is
nothing on the face of the award that can show that the panel
failed to address critical contract terminology.").

### 3. Award Based on the Subject Matter Submitted to the Arbitrators

Section 10(a)(4) of the FAA provides that an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Nevertheless, "[t]he Supreme Court has held that a contention that 'the arbitrators misconstrued a contract is not open to judicial review' under § 10(a)(4) of the FAA." Int'l Longshoremen's Assoc. v. Hampton Rds. Shipping Assoc., No. 94-1838, 1995 U.S. App. WL 19321, at *6 (4th Cir. Jan. 19, 1995) (quoting Bernhardt v. Polygraphic Co. of Am., Inc., 350 U.S. 198, 203 n.4 (1956)). "Prior cases addressing this provision have vacated arbitration awards on this ground only when the arbitrator either failed to resolve an issue presented to him or issued an award that was so unclear and ambiguous that the reviewing court could not engage in meaningful review." Id.

Here, MCI and National Union argue that the Damages Award must be vacated under § 10(a)(4) because the Panel did not provide a reasoned award. (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 10-12); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)).)

The court rejects MCI and National Union's § 10(a)(4) argument. An award being unreasoned is not a basis for vacatur under § 10(a)(4). As noted, awards are generally vacated under § 10(a)(4) only where the arbitrators failed to resolve an issue presented to them or the award is ambiguous or unclear. <u>Int'l Longshoremen's Assoc.</u>, 1995 U.S. App. WL at *6.

Once again, the Panel was under no obligation to provide a reasoned Damages Award and MCI and National Union have not proven that the Panel did not resolve the issues presented to them by the parties. <u>Supra</u> Part III.A.2. The mere fact that the Panel did not rule in MCI and National Union's favor does not indicate that the Panel did not resolve the issues presented to them.

A significant record exists from which this court can review the Damages Award. The Arbitration Agreement was entered into and arbitration was conducted after significant and lengthy proceedings in this court and the Fourth Circuit Court of Appeals. MCI and City's cross-motions for summary judgment (which involved, in part, the parties' claims concerning the amount of damages the parties contended they were entitled) were denied because a reasonable jury could find in favor of either party based on the evidence in the record. From this court's review of the order denying the parties' cross-motions for summary judgment and the Panel serving as finder of fact during the arbitration, it follows that the Damages Award can reasonably be understood to flow from the evidence contained in the record

and the claims submitted by the parties. See Hatfield v. Johnson

Controls, Inc., 791 F. Supp. 1243, 1251 n.5 (E.D. Mich. 1992)

(noting that arbitrators and jurors both serve the function of

fact finder).

Further, MCI and National Union have not proven that the

Damages Award is unclear or ambiguous so as to warrant vacatur

under § 10(a)(4). It is not apparent from the face of the

Damages Award that the Panel did not consider the language of the

Agreement and all of the parties' claims and arguments. To the

contrary, because of the extensive record available from all of

the related proceedings, it is clear the Panel did consider the

parties' claims and arguments. Additionally, the Damages Award

states that "[a]ny claims or issues of either party not expressly

awarded herein, are hereby denied." (Def.'s Notice of

Arbitration Award Ex. A (Doc. 503-2) at 2.) Considering the

multiple number of claims and counterclaims submitted to the

Panel, "[t]his statement of an arbitral decision could hardly be

more definite," clear and unambiguous. See Remmey, 32 F.3d at

150 (holding that an unreasoned award with similar language (to

the effect that all claims of the claimant against the respondent

are dismissed in all respects) should not be vacated under §

10(a)(4)). Accordingly, the court finds that MCI and National

Union have failed to meet their burden of showing that the

Damages Award should be vacated under § 10(a)(4) of the FAA.

### 4.   Enforceability of the Damages Award

MCI and National Union argue that the Damages Award is unenforceable on two grounds: (1) the Damages Award is based on an invalid agreement to arbitrate, as the parties did not mutually assent to the terms of the Arbitration Agreement, and (2) the award violates public policy.

### a.   Mutual Assent

MCI and National Union argue that disagreements between the parties as to whether they were permitted to submit additional briefs and documents to the Panel evince a lack of mutual assent to the terms of the Arbitration Agreement, thus the Arbitration Agreement is unenforceable.  (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 12-13); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542))).  MCI and National Union assert this argument only <u>after</u> having received the benefits of the Arbitration Agreement and <u>after</u> the Damages Award was entered by the Panel.  Nevertheless, the court examines whether MCI and National Union have established that the Arbitration Agreement is invalid for want of mutual assent.

"To determine whether the parties agreed to arbitrate, [and thus whether the arbitration agreement at issue is enforceable,] courts apply state law principles governing contract formation."

<u>Hightower v. GMRI, Inc.</u>, 272 F.3d 239, 242 (4th Cir. 2001).[11]

Under North Carolina law, a valid contract requires mutual assent

of the parties to the terms of the agreement so as to establish a

"meeting of the minds."  <u>Creech v. Melnick</u>, 347 N.C. 520, 527,

495 S.E.2d 907, 911–12 (N.C. 1998).   An agreement lacks mutual

assent, and thus may be avoided, where the movant establishes by

"clear, strong, and convincing" evidence, <u>Speas v. Merch.'s Bank</u>

<u>& Trust Co. of Winston-Salem</u>, 188 N.C. 524, 125 S.E. 398, 401

(1924), that the parties made a "mutual mistake" "as to an

existing or past fact that is material and enters into and forms

the basis of the contract or is the 'essence of the agreement,'"

<u>Creech</u>, 495 at 912 (citation omitted).   Further, a contract lacks

mutual assent, and thus may be avoided, where a party's

unilateral mistake as to a term in the agreement is accompanied

by "fraud, imposition, undue influence, or like oppressive

---

[11] In the case at bar, none of the parties have disputed
that North Carolina law applies to the issue of whether the
Arbitration Agreement is enforceable.  With regard to the
validity of the Arbitration Agreement, the parties exclusively
discussed North Carolina contract law in their briefs.  (Pl.'s
Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at
12-13); (National Union's Mot. to Vacate and/or Remand the
Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s
Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)));
(Def.'s Mem. in Support of Resp. to Motion to Vacate Damages
Award (Doc. 553) at 16-17.)   The court thus looks to North
Carolina law in determining the validity of, and the parties
obligations under, the Arbitration Agreement.
    Under North Carolina law, agreements to arbitrate are
generally valid pursuant to N.C. Gen. Stat. § 1-569.6.
Additionally, "the law of contracts governs the issue of whether
there exists an agreement to arbitrate."  <u>Routh v. Snap-On Tools</u>
<u>Corp.</u>, 108 N.C.App. 268, 271, 423 S.E.2d 791, 794 (Ct. App.
1992).

circumstances." <u>Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.</u>, 288 N.C. 122, 136, 217 S.E.2d 551, 560 (1975).[12]

The court finds that MCI and National Union have not established that the Arbitration Agreement is unenforceable for want of mutual assent by any standard. With regard to MCI and National Union's mutual mistake argument, the parties have failed to meet their heightened burden of proving that the disagreements at issue concerned a <u>material</u> matter. On the "materiality" point, MCI and National Union offered no evidence. Instead, they merely relied on two unsupported assertions: "[t]his issue goes to the heart of the dispute between City and MCI" and "it is a material term . . . ." (Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542) at 12-13); (National Union's Mot. to Vacate and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages Award (Doc. 542)).) Two bare assertions do not constitute "clear, strong, and convincing" evidence. <u>See</u> <u>Gardner v. May</u>, 172 N.C. 192, 194-95, 89 S.E. 955, 956 (1916) (stating that a consent judgment could be set aside for mutual mistake, though "the burden [is] on the party attacking the judgment to show <u>facts</u> which will entitle him to relief" (emphasis added)).

---

[12] The court notes that "North Carolina has a strong public policy favoring the settlement of disputes by arbitration." <u>Johnston County v. R.N. Rouse & Co.</u>, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992). Pursuant to this public policy, "any doubt concerning the existence of [an arbitration agreement] <u>must</u> . . . be resolved in favor of arbitration." <u>Id.</u> (emphasis added).

Similarly, MCI and National Union have not proven the existence
of a unilateral mistake.  MCI and National Union offered no
evidence tending to show that the purported mistakes at issue
were induced by any misrepresentations or deceitful conduct on
part of City or that the circumstances surrounding their entering
the Arbitration Agreement were oppressive.[13]

### b.  Public Policy

Pursuant to the Supreme Court's decision in <u>Misco</u>, an
arbitration award may be vacated if the award violates "some
explicit public policy that is well defined and dominant, and is
to be ascertained by reference to the laws and legal precedents
and not from general considerations of supposed public
interests."  <u>Misco</u>, 484 U.S. at 42-45 (internal citations and
quotations omitted).

In the present matter, MCI and National Union argue that the
Damages Award violates North Carolina public policy because City
purportedly received both actual and liquidated damages for the
same breach and did not allocate its costs.  (Pl.'s Mem. in

---

[13] The Panel's decision concerning the types of evidence
they would consider is procedural in nature.  <u>See</u> <u>Int'l Union,
United Mine Workers of Am. v. Marrowbone Dev. Co.</u>, 232 F.3d 383,
389 (4th Cir. 2000) ("An arbitrator typically retains broad
discretion over procedural matters and does not have to hear
every piece of evidence that the parties wish to present.").  The
court notes that neither MCI nor National Union presented
evidence tending to show that any of the Panel's procedural
rulings "were in bad faith or so gross as to amount to
affirmative misconduct."  <u>See</u> <u>id.</u> at 389 (noting the standard for
vacating an arbitral award because of an arbitrator's procedural
ruling).

25

Support of Mot. to Vacate Damages Award (Doc. 542) at 8-10);
(National Union's Mot. to Vacate and/or Remand the Arbitration
Award as to MCI (Doc. 548) at 1 (incorporating Pl.'s Mem. in
Support of Mot. to Vacate Damages Award (Doc. 542)).)

The court finds MCI and National Union's public policy
argument unpersuasive.  As stated, in reviewing arbitration
awards "courts will not look behind a lump-sum award in an
attempt to analyze [an arbitrator's] reasoning process."
Atlanta-Tomberlin, 672 F. Supp. at 889.  MCI and National Union
are not able to point to anything in the Damages Award itself
that indicates that the Panel's ruling violated public policy.

Nevertheless, even looking behind the lump-sum Damages
Award, MCI and National Union have not proven that the Damages
Award violates public policy.  Both MCI and City have submitted
reasonable possible calculations of the amount City is owed and
their arguments as to these amounts is clearly set forth in the
record of the arbitration proceeding.  (See, e.g., Decl. of
William Cary Exs. 56-57 (Docs. 525-5, 525-6).)  The specific
numbers offered by the parties are speculative at best.  What is
clear from the record is that MCI submitted and argued its
damages calculation (i.e., City owes it approximately $450,000)
and City argued its calculation (i.e., MCI owes it approximately
$17,000,000).  The Panel had the benefit of significant evidence
and argument presented by both MCI and City and the Panel's award
appears reasonable under the circumstances.  The court is unable

to find, from the record, that the Panel necessarily erred in the manner MCI and National Union contend, thus the court is unable to conclude that the award is void as against public policy.

Furthermore, while North Carolina courts prohibit parties from recovering twice for the same harm and require litigants to allocate their costs, "misapplication of [state] law by the arbitrators is simply an error of law. Errors of law are not the grounds on which a court can overturn an arbitration award." <u>See</u> <u>Arrowhead Global Solutions, Inc. v. Datapath, Inc.</u>, No. 04-2000, 2006 WL 278393, at *5 (4th Cir. Feb. 3, 2006). Nothing in North Carolina law <u>clearly</u> indicates that prohibitions on receiving actual and liquidated damages from the same breach and failing to allocate costs constitute well defined and dominant public policies. In sum, the court finds that MCI and National Union have not met their burden of proof in establishing that the Damages Award should be vacated as being violative of public policy.

## 5. Breach of the Arbitration Agreement

Section two of the FAA provides that an arbitration agreement is enforceable unless legal or equitable grounds for its revocation are established. 9 U.S.C. § 2. Pursuant to section two of the FAA, MCI and National Union argue that the Damages Award should be vacated because City breached its implied

covenant of good faith and fair dealing under the Arbitration
Agreement. (Pl.'s Mem. in Support of Mot. to Vacate Damages
Award (Doc. 542) at 13-20); (National Union's Mot. to Vacate
and/or Remand the Arbitration Award as to MCI (Doc. 548) at 1
(incorporating Pl.'s Mem. in Support of Mot. to Vacate Damages
Award (Doc. 542)).) MCI and National Union contend that City
breached the Arbitration Agreement by submitting claims to the
Panel for which City was not entitled to recover and attempting
to prevent MCI from presenting its case. (Id.)

The court rejects MCI and National Union's final proposed
basis for vacatur of the Damages Award. As stated, the Fourth
Circuit has held that "[i]n order for a reviewing court to vacate
an arbitration award, the moving party must sustain the heavy
burden of showing one of the grounds specified in the Federal
Arbitration Act or one of certain limited common law grounds."
Choice Hotels, 519 F.3d at 207 (4th Cir. 2008) (citation and
quotation marks omitted); supra Part II. The court finds that
neither the FAA nor the Fourth Circuit provide that the breach of
an arbitration agreement is a ground for vacatur of an arbitral
award.

Although the Fourth Circuit in Hooters of America, Inc. v.
Phillips, 173 F.3d 933 (4th Cir. 1999) held that breach of a
party's duty to perform in good faith may be a basis for
revocation of an arbitration agreement, application of the
principles espoused in Hooters is not warranted in this case. In

Hooters, the Fourth Circuit emphasized that reviewing courts
should generally refrain from disrupting arbitration awards on
fairness grounds.  Id. at 941 ("fairness objections should
generally be made to the arbitrator, subject only to limited
post-arbitration judicial review as set forth in section 10 of
the FAA.").  Moreover, the Hooters court specifically limited its
holding to the facts present in that case.  Id. at 940-41.  The
court noted that the procedural rules at issue in Hooters were
"so one-sided that their only possible purpose is to undermine
the neutrality of the proceeding" and that the court  "only
reach[ed] the content of the arbitration rules because their
promulgation was the duty of one party."  Id. at 938, 941.

     The facts in the present case are not analogous to the facts
in Hooters.  There is no evidence that the Panel did not apply
the procedural rules in a neutral manner.  Further, unlike in
Hooters, nothing suggests that one party (i.e., City) was solely
responsible for the selection of the arbitral rules.[14]

**B.   Motion to Remand**

     In addition to moving for the vacatur of the Damages Award,
MCI has moved, in the alternative, to remand the Damages Award

_____

     [14] In Hooters, a contract of adhesion gave one party
unfettered discretion in selecting the procedural rules that
governed the arbitration.  Hooters of Am., Inc. v. Phillips, 173
F.3d 933, 936 (4th Cir. 1999).  By contrast, the Arbitration
Agreement in this case was drafted during the course of
litigation.  In light of this fact and the fact that MCI and
National Union have offered no evidence to the contrary, the
court finds that City, MCI, and National Union selected the
procedural rules governing the arbitration proceeding.

back to the Panel for clarification as to the bases for the Panel's decision. (Doc. 535.) Although the FAA does not specifically empower courts to remand arbitration awards for clarification,[15] in <u>Cannelton Industries, Inc. v. District 17, United Mine Workers of America</u> the Fourth Circuit held that "<u>[w]hen an arbitrator does provide reasons</u> for a decision and when those reasons are so ambiguous so as to make it impossible for a reviewing court to decide whether an award draws its essence from the agreement, the court may remand the case to the arbitrator." 951 F.2d 591, 594 (4th Cir. 1992) (emphasis added).

Here, MCI argues that the Damages Award must be remanded for the same reasons the court should vacate the award; the award is ambiguous and the Panel failed to address critical contract terminology. (Pl.'s Mem. in Support Mot. to Remand Awards to Arbitration Panel for Clarification (Doc. 536) at 10-17.) Once more, this court disagrees.

The court finds that, even assuming, <u>arguendo</u>, that the Fourth Circuit would extend its holding in <u>Cannelton</u> to cases such as this one, where the arbitrators did <u>not</u> provide a reasoned award and were not required to do so, remand of the Damages Award is not proper. As stated, the Damages Award is not ambiguous, it is possible for the court to conclude that the award drew its essence from the Agreement, and there is no

_____

[15] The FAA does however state that awards may be modified or corrected. 9 U.S.C. § 11.

30

evidence that the Panel failed to discuss critical contract terminology.  <u>See</u> <u>supra</u> Parts III.A.2, III.A.3.[16]

**IV. Conclusion**

For the reasons set forth above, Plaintiff and Counter Defendant's motions to vacate (Docs. 541, 548) are DENIED and Plaintiff's motion to remand (Doc. 535) is DENIED.

This the 9th day of March 2009.

_William L. Osteen, Jr._
United States District Judge

---

[16] The court also notes that the Fourth Circuit's remittitur language in <u>Cannelton</u> is permissive, not obligatory.  <u>See</u> <u>Cannelton Indus., Inc. v. Dist. 17, United Mine Workers of Am.</u>, 951 F.2d 591, 594 (4th Cir. 1992) ("[T]he court <u>may</u> remand the case to the arbitrator." (emphasis added)).